FILED

2010 Jul-29 AM 08:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **TERESA C. MILAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 09-BE-1252-NW** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On November 16, 2005, the claimant, Teresa Milam, applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. The claimant alleged disability because of carpel tunnel syndrome in both hands and arthritis in her hands, neck, and back commencing on March 1, 2004. She later amended the onset date to October 13, 2005. The Commissioner initially denied the application, and the claimant requested and was granted a hearing before an Administrative Law Judge. On December 7, 2007, the ALJ held that the claimant was not disabled as defined by the Social Security Act, and therefore was ineligible for disability insurance benefits. The Appeals Council denied the claimant's request for review on May 4, 2009. Thus, the claimant has exhausted all her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: whether the ALJ (1) properly discounted the opinion of Dr. Tomlinson, her treating physician, and (2) properly applied the Eleventh Circuit's three-part pain standard.

## III. STANDARD OF REVIEW

The standard of review is limited to determining whether the Commissioner applied the correct legal standards and whether substantial evidence supports the Commissioner's factual conclusions.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) . In reviewing whether the ALJ applied the appropriate legal standards, "[n]o...presumption of validity attaches to the [Commissioner's] legal conclusions." *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987). However, this court does not review the Commissioner's factual determinations *de novo*, and so therefore may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Even if the court finds that the evidence "preponderates" against the Commissioner's decision, the court must affirm the ruling if it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is defined as "more than a mere scintilla" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In evaluating whether substantial evidence exists, the court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  Thus, a

reviewing court not only must look to those parts of the record that support the opinion of the ALJ, but also must take into account evidence that detracts from the ALJ's opinion. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

Additionally, the ALJ must state with particularity the weight given different medical opinions and the reasoning behind each determination. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Failure to adequately do so is reversible error. *Id.* Generally, the ALJ must give substantial or considerable weight to the testimony of a treating physician. *Crawford* 363 F.3d at 1159. However, the Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from the condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also* 20 C.F.R. § 404.1529; *Wilson*, 284 F.3d at 1225.

## V. FACTS

At the time of the ALJ's decision, the claimant was forty-eight years old. (R. 23). She has a high school education and past relevant work experience as a meat packer. (R. 77, 172). Claimant stopped working in March of 2004, and she alleges that she has been unable to work since October 13, 2005 because of carpel tunnel syndrome in both hands and arthritis in her hands, neck, and back. (R.56, 76). Claimant stated in her written application for disability insurance that she did not lose her job as a result of her condition nor did she seek to work since the alleged onset of her disability. (R. 86). She has not engaged in substantial gainful activity since the alleged onset date. (R. 66).

*Physical Limitations*

On March 3, 2003, a year prior to the date the claimant stopped working, a MRI revealed some degenerative changes in the claimant's cervical spine, which included a few anterior and posterior disc spur complexes. (R. 19, 71). The disc spaces at C2-3 and C3-4 were normal. The MRI showed disc space narrowing at C4-5 with an anterior and posterior disc-spur complex, but no significant narrowing of the neural foramen and no cord compression. The MRI also indicated minimal retrospondylolisthesis (misaligned vertebra) at C5-6 and posterior disc space narrowing

with a small broad-based disc-spur complex posteriorly, although the spur did not extend back to the level of the spinal cord and the MRI indicated only minimal narrowing of the neural foramen bilaterally. The MRI also showed a disc-spur complex at C6-7. ( R. 128).

No medical records indicate that the claimant sought any medical treatment for pain following the MRI until a full two years later in February 2005 when the claimant saw primary care physician, Dr. J.A. Tomlinson. The record contains brief notes from Dr. Tomlinson documenting the claimant's doctor visits that occurred approximately once a month between February 2005 and September 2007. In these visits, the claimant regularly complained of severe headaches as well as neck, back, and leg pain. Dr. Tomlinson prescribed an increasing dosage of Lortab for pain, from Lortab 7.5 in July 2006 to Lortab 10 in March 2007. He also prescribed Xanax to control the headaches,  and on July, 21, 2005, the claimant reported that the Xanax indeed helped control her headaches. (R. 130). Overall, the record reflects that Dr. Tomlinson treated the patient conservatively and does not indicate that he conducted a full physical exam, ordered diagnostic tests or nerve blocks for pain, or referred the claimant to any specialists. Additionally, on August 31, 2005, Dr. Tomlinson noted in the claimant's record that he was aware she was seeking disability. (R. 129).

On March 20, 2006, Dr. Frank G. Gillis performed a consultative physical examination on the claimant on behalf of Disability Determination Services. (R. 137). The claimant stated to him that she had suffered from bilateral carpal tunnel syndrome for as long as 13 years, and she also complained of arthritis in her neck, back, and legs as well as headaches. Additionally, she stated that she was not able to grip or lift anything for a very long period of time and could not sit or stand for over 10-15 minutes without pain. She also reported often awakening during the night with painful hands and that she used night splints and anti-inflammatory medicines to help with the pain. (R.

138).

Dr. Gillis conducted a full examination of the claimant and indicated in his report that she had full range of motion in her back and all extremities. He also found no deformities, tenderness or spasms in her back. In addition, he noted she had no difficulty moving about and possessed a normal gait and station. He also indicated that the claimant's neurological examination was unremarkable; she possessed normal strength and sensory functioning, no muscle atrophy, and intact fine and gross manipulation. Dr. Gillis concluded that he would not place any type of functional restriction on the claimant. (R. 138-9).

On March 30, 2006, Dr. Nuckols, a psychiatrist, also examined the claimant. (R. 140). He found no severe psychological impairment, although he reported that the claimant did suffer from depression and a "grief reaction" to her daughter's death that had occurred two months prior in January 2006. (R. 85). He classified the "degree of limitation" this condition placed upon the claimant as "mild," noting that the claimant participated in a full range of activities, including cooking and shopping without assistance and completing household chores with occasional assistance. Additionally, he cited the fact that she was able to care adequately for her seven-year-old son and two pets, a cat and a bird. (R. 150-152).

On October 8, 2007, Dr. Tomlinson filled out a Medical Source Opinion ("MSO") form on behalf of the claimant. (R. 164). In this form, Dr. Tomlinson indicated extreme limitations and restrictions on the claimant's ability to function. He stated that the claimant could stand for 20 minutes at one time for a total duration of two hours per work day, walk for 15 minutes at one time for a total of two hours per work day, and sit for 20 minutes at one time for a total of two to three hours per work day. He also indicated that the claimant could only lift or carry two to three pounds

with any frequency  and only occasionally five pounds. He also found that she could occasionally push/pull with all her extremities, climb, stoop, kneel, crouch, reach overhead, but never balance or crawl.

### The ALJ Hearing

After the Commissioner denied the claimant's request for disability insurance benefits, the claimant requested and received a hearing before an ALJ. (R. 17). At the beginning of the hearing, the ALJ noted that the claimant had never obtained a nerve study or Electromyography ("EMG") to document the presence of carpal tunnel syndrome. (R. 173).

During the hearing, the claimant testified that she had carpal tunnel syndrome, back spurs, arthritis in her neck, back and ankles, and suffered from depression. She stated that she had  not had medical insurance for three years prior to the hearing, although she was currently covered by her boyfriend's insurance. She also stated that she took the prescription medicines Lortab and Xanaz, and that she was unable to function in a vehicle on her medications and would not take them if she had to drive. She also stated that she had no grip in either hand and had difficulty opening jars, threading a needle, and manipulating small objects. The claimant also reported that she moved between sitting and standing about every twenty minutes. On a scale of one to ten, she stated that her pain on a regular day was a seven. She also reported that on a good day she could run errands and complete some house cleaning. She found cleaning the bathtub  difficult because bending over hurt her back. The claimant also reported cooking meals that took anywhere from a half hour to an hour to prepare. She stated that her boyfriend cut and peeled food for her and regularly brought in the heavy groceries. To treat her pain, she reported soaking in the tub, using a heating pad, and taking medication.

At the hearing, the ALJ noted the disparity of opinion between Dr. Gillis, the consulting physician, and Dr. Tomlinson, the claimant's primary care physician, as to the extent of the claimant's physical limitations. The ALJ then asked Mr. Thomas Elliot, a Vocational Expert ("VE"), to determine the claimant's ability to work based on the two different assessments of her condition. Taking into consideration Dr. Gillis' assessment, the ALJ inquired as to what jobs would be available if the claimant was able to perform light work, but was restricted from constant reaching, handling, grasping, pushing and pulling, and only made less than constant use of her hands and upper extremities. The VE responded that she could be an inspector of product, a labeler, or perhaps a sales attendant retail. (R. 186).

The ALJ then asked the VE what jobs would be available to the claimant assuming the accuracy of Dr. Tomlinson's assessment of the claimant's limitations. The VE replied that the restrictions outlined  would preclude all gainful employment because they placed the claimant at a less than sedentary exertional level in terms of lifting and only allowed for occasional handling. (R. 187-8).

*The ALJ's Decision*

On December 7, 2007, the ALJ determined that the claimant was not disabled under the Social Security Act. (R. 24). The ALJ found that the claimant (1) met the insured status requirements of the Social Security Act, (2) had not engaged in substantial gainful activity since October 13, 2005, the alleged onset date as amended, and (3) suffered from degenerative changes in the cervical spine and a "distant history of carpal tunnel syndrome with no objective signs or nerve conduction studies showing a continuation of the problem." (R. 19).  He found, however, that none of the claimant's impairments manifested the specific signs and diagnostic findings required by the Listing of

8

Impairments, nor did they result in a severe impairment significantly impacting her ability to work. (R. 20).

The ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (R. 22). He stated that the claimant's self-professed daily activities were not limited to the extent that one would expect given her complaints of disabling symptoms. He gave "little weight" to Dr. Tomlinson's MSO because he found that Dr. Tomlinson's own medical records documented a conservative treatment history and did not support the strict limitations and restrictions he placed upon the claimant. Given the dearth of objective medical evidence beyond the MRI from 2003, he concluded that Dr. Tomlinson prescribed pain medication primarily in response to the patient's *subjective* complaints and as an accommodation to the claimant's decision to seek disability. (R. 21-22). For these reasons, he concluded that Dr. Tomlinson's opinion conflicted with the record as a whole, and therefore, was entitled to little weight. The ALJ also stated that he accorded "great weight" to the opinion of consulting physician Dr. Gillis because the doctor performed an extensive physical examination as opposed to "no particular evaluation by Dr. Tomlinson who seems to be prescribing medications apparently." (R. 23). He also mentioned that "significant gaps" existed in the claimant's treatment history. (R. 22).[1] Finally, the ALJ concluded that the claimant had the residual functional capacity to perform "a full range of light work." (R. 24).

---

[1] In her brief, the claimant addressed the ALJ's finding that significant gaps existed in her treatment history by pointing to the fact that she was uninsured for three years after she stopped working in March of 2004. This court does not find any significant gaps in her medical history from her alleged onset date of October 13, 2005 until the date of the ALJ's decision on December 7, 2007, nor does it find that the ALJ materially relied on this finding in his determination that the claimant was not disabled under the Social Security Act.

## VI. DISCUSSION

**1.     The ALJ properly discounted Dr. J.A. Tomlinson's medical opinion.**

The claimant argues that the ALJ improperly discounted Dr. J.A. Tomlinson's medical opinion. To the contrary, this court finds that the ALJ properly accorded "little weight" to Dr. Tomlinson's opinion by showing good cause for discounting it.

When considering a claimant's medical records, the ALJ must state with particularity the weight he accorded to medical opinions and the reasons for according that weight. *Sharfarz* 825 F.2d at 279. The ALJ must give substantial or considerable weight to the testimony of a treating physician unless "good cause" is shown to the contrary. *Crawford* 363 F.3d at 1159. The Eleventh Circuit has found "good cause" and approved of an ALJ discounting a treating physician's report when the report "is not accompanied by objective medical evidence or is wholly conclusory." *Id.* (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir.1991)). Additionally, good cause exists where the treating physician's opinions are inconsistent with his own medical records. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).

In the instant case, the ALJ explicitly stated that he accorded "little weight" to Dr. Tomlinson's opinion because "his objective medical records do not support the limitations and restrictions contained in his medical source statement." (R. 22). To support this finding, the ALJ pointed out that although Dr. Tomlinson recorded the claimant's complaints of headaches as well as neck, back and leg pain in her monthly visits between February 28, 2005 and September 25, 2007, he prescribed only pain medication and little else; he included no significant clinical findings that would support her allegations of disabling limitations. (R. 22-23). Additionally, Dr. Tomlinson completed no nerve conduction studies nor did the record contain any significant signs of any recent

carpal tunnel syndrome. The ALJ concluded that Dr. Tomlinson's prescription of pain medication appeared to be in response to the claimant's *subjective* complaints as the doctor did not explore further testing or different types of treatment. Given the absence of objective medical evidence verifying her pain beyond the MRI from 2003 indicating a few back spurs of the cervical spine, the ALJ suggested Dr. Tomlinson's report was "an accommodation to his patient who is seeking disability." (R. 22). Even as far back as a doctor's visit of August 31, 2005, Dr. Tomlinson was aware that the claimant was seeking disability and so noted on the patient's record on that date. (R. 129).

The ALJ also stated that he gave "great weight" to Dr. Gillis' evaluation of the claimant and explained his reasons for doing so. (R. 23). Dr. Gillis conducted a thorough, one-time examination in which he found no objective evidence that would limit the claimant's ability to reach, handle, grasp and use her hands and fingers in a normal fashion. Indeed, Dr. Gillis wrote that he would place "no functional restrictions" on the claimant. (R. 23).

In light of Dr. Gillis's evaluation and the ALJ's reasonable analysis of the medical records, the ALJ stated with enough specificity his reasons for according less weight to Dr. Tomlinson's opinion and has offered substantial evidence to support his reasoning. The court notes that "[e]ven if the evidence preponderates against the Commissioner's findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158-9. Given that the ALJ has offered substantial evidence to support giving less weight to Dr. Tomlinson's opinion, the court cannot  substitute its own judgment for that of the ALJ.

**2.      The ALJ properly applied the Eleventh Circuit's three-part pain standard.**

The claimant also argues that the ALJ improperly applied the Eleventh Circuit's three-part

pain standard. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The three-part pain standard applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Holt*, 921 F.2d at 1223. The pain standard requires (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (3) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain. *Id.*

Under the pain standard, the ALJ must consider the testimony of the claimant, including any alleged limitations on daily activities caused by the impairment or combination of impairments. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). Credibility determinations are reserved to the ALJ; although if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the claimant's testimony be accepted as true. *Id*.

In the instant case, the ALJ acknowledged that the claimant suffers from degenerative changes in the cervical spine and a "possible distant history of carpal tunnel syndrome." (R. 21). However, the ALJ found the claimant's allegations concerning the intensity, severity, and persistence of her pain were only partially credible because medical evidence failed to support them.

The ALJ stated that he found the claimant's subjective testimony only partially credible for a variety of reasons. First, the ALJ found that the claimant's self-professed daily activities were not limited to the extent one would expect given her complaints of disabling symptoms. He pointed to

the following daily activities: cleaning the house, driving, and cooking. (R. 22). This court notes the report of Dr. Nuckols also supports this finding; he did not find the claimant's depression disabling precisely because she engaged in these same activities and also pointed out that she was able to care adequately for her son and two pets. (R. 152). The claimant also stated in her written application for disability insurance that she did not lose her job as a result of her condition nor did she even attempt to work since the onset of her alleged disability. (R. 86).

Second, the ALJ points out that the claimant "has not generally received the type of medical treatment one would expect from a totally disabled individual." (R. 22). Although the claimant did have monthly doctor visits and prescriptions, the ALJ reasoned that Dr. Tomlinson "seems to prescribing pain medications apparently" in response to the claimant's *subjective* complaints of pain as opposed to objective medical findings; he never conducted a full physical examination of the claimant like the one completed by consulting physician Dr. Gillis, nor did he order diagnostic testing or refer her to a specialist.  When Dr. Gillis did conduct a full physical exam, he found no objective evidence that the claimant was not able to reach, handle, grasp or use her hands and fingers in a normal fashion. For all these reasons, the ALJ is justified in finding that the objective evidence does not substantiate the severity of the claimant's pain and thus substantial evidence supports the ALJ's application of the pain standard.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.

The court will enter a separate order in accordance with this Memorandum Opinion.

DONE and ORDERED this 29th day of July, 2010.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE